```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

WALTON CONSTRUCTION - A CORE                CIVIL ACTION
COMPANY, LLC,

VERSUS                                      NO: 14-1781

FIRST FINANCIAL INSURANCE COMPANY           SECTION: R(2)
```

### ORDER AND REASONS

This insurance coverage dispute concerns a commercial general liability policy issued by defendant First Financial Insurance Company. Plaintiff Walton Construction seeks a declaration that the policy affords it "additional insured" coverage in an underlying state court tort suit. First Financial seeks a declaration that it has no duty to defend or indemnify Walton. The parties have filed cross motions for summary judgment.[1] For the following reasons, the Court denies Walton's motion and grants First Financial's motion.

### I. BACKGROUND

This insurance coverage dispute arises out of a personal injury lawsuit brought by John Maestri against Entergy Louisiana, LLC, in Louisiana state court. Only a few facts are necessary to understand the underlying suit. Entergy is a power company. Maestri worked in construction for A-1 Glass Service, Inc., a

---

[1] R. Doc. 9 (First Financial); R. Doc. 14 (Walton).

commercial glazier.  A-1 worked as a subcontractor to Walton on a construction project for the Jefferson Parish School Board.  In March 2012, while Maestri was installing glass as part of that project, an Entergy high-voltage power line electrocuted him, burning his arms, chest, and hands.

Maestri sued Entergy for his injuries.  After Maestri sued Entergy, Entergy filed a third-party complaint against A-1 and Walton, alleging that the companies had violated the Louisiana Overhead Power Line Safety Act, La. Rev. Stat. §§ 45:141-146, by failing to give Entergy advance notice that their workers would be working in close proximity to its power lines.  Entergy argues that under section 144 of the Act, A-1 and Walton are liable to Entergy for any damages that Entergy must pay to Maestri. Section 144 provides:

> If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact.

Walton seeks to recover from First Financial the costs it has expended so far to defend against Entergy's third-party complaint.  It also seeks a declaration that First Financial has an ongoing duty to defend and indemnify Walton against Entergy's third-party complaint.

The parties agree on the following facts about the policy at issue in these motions.  First Financial issued commercial

general liability Policy No. HGL0028059, with a policy period of July 1, 2011 to July 1, 2012, to A-1 as the named insured.[2] A-1's contract with Walton for the School Board project specified that A-1 would "purchase and maintain insurance," including commercial general liability insurance, that would "name Walton . . . as [an] additional insured[] with regard to the specified project."[3]

> The policy's Insuring Agreement provides, in relevant part:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.[4]

The policy contains an endorsement allowing for the inclusion of "additional insureds" by contract. That endorsement provides, in relevant part:

> Who Is An Insured is amended to include as an additional insured any . . . organization[] with whom you agreed, because of a written contract . . . to provide insurance such as is afforded under this Coverage Part, but only:

---

[2] R. Doc. 16-1 at 1 (First Financial Statement of Material Facts); R. Doc. 17-1 at 1 (Walton Response to Statement of Material Facts).

[3] R. Doc. 14-4 at 2 (Walton Statement of Material Facts); R. Doc. 16-1 at 1-2 (First Financial Response to Statement of Material Facts); R. Doc. 14-2 at 12, 36 (A-1 contract with Walton).

[4] R. Doc 1-3 at 17 (policy).

    1.    With respect to liability for "bodily injury" . . . caused by "your work" or maintenance, operations or use of facilities owned or used by you; and
    2.    When such written contract . . . is fully executed prior to an "occurrence" in [sic] which coverage is sought under this policy.[5]

The policy also contains an endorsement adding a "cross liability" exclusion. That exclusion provides, in relevant part, that the policy "does not apply to any actual or alleged 'bodily injury' . . . to . . . [an] employee of any insured."[6] The parties agree that Maestri was A-1's employee on the date of the accident.[7] First Financial now moves for summary judgment on Walton's claims for defense and indemnity on the ground that the cross-liability exclusion unambiguously excludes Walton's claims.

**II. STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

    [5]    *Id.* at 26.

    [6]    *Id.* at 28.

    [7]    R. Doc. 9-4 at 1; R. Doc. 17-1 at 1.

the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.

The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**III. DISCUSSION**

The parties agree that Louisiana law governs this case. In Louisiana, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). "The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent." *Id.* (citing La. Civ. Code art. 2045). If the words of the contract are "clear and explicit and lead to no absurd consequences," the plain meaning of the contract prevails, and "no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *id.* art. 2047 (words

of a contract should be given their "generally prevailing meaning," unless the words have acquired a technical meaning).

If there is ambiguity in an insurance policy, the ambiguity must be resolved in favor of the insured. *La. Ins. Guar. Ass'n*, 630 So.2d at 764; *see also* La. Civ. Code art. 2056 ("A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."). This rule of strict construction should be applied only if the contract is actually ambiguous; it "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity where none exists." *Reynolds v. Select Props., Ltd.*, 634 So. 2d 1180, 1183 (La. 1994) (quoting *Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977)); *see also La. Ins. Guar. Ass'n*, 630 So. 2d at 764 ("When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation."). Moreover, "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Reynolds*, 634 So. 2d at 1183.

With these principles in mind, the Court turns to the policy at issue in these motions. The policy provides coverage for "bodily injury" to which the insurance applies but excludes coverage for "bodily injury" to an "employee of any insured."

The parties do not dispute that Maestri was the employee of A-1. Nor do they dispute that A-1 was the named insured under the policy. Thus, First Financial is correct: since Maestri was the employee of an insured, the policy categorically excludes coverage for damages for his bodily injuries. Walton's claims are not covered.

Walton attempts to evade the straightforward language of the cross-liability exclusion by characterizing the damages sought by Entergy not as damages for Maestri's bodily injuries, but as damages for Walton's "alleged violations of the [Power Lines Act]."[8] Walton is wrong. Louisiana Revised Statute § 45:144 allows Entergy to recover its damages from a party that violates the statute if the violation results in "physical or electrical contact with any high voltage overhead line," and Entergy incurs "damages, costs, or expenses" as a result. Here, the damages that Entergy may incur--and thus the damages it seeks from Walton--are damages for Maestri's physical injuries. *See Moreno v. Entergy Corp.*, 79 So. 3d 406, 412 (La. Ct. App. 2011) (rejecting a similar attempt by an insured to characterize damages sought by Entergy under the Act as damages for its "contingent liability" under the Act, rather than damages for "physical injury"), *rev'd in part on other grounds*, 105 So. 3d 40 (La. 2012). Because the damages for which Walton may be liable

---

[8]  R. Doc. 17 at 9; R. Doc. 23 at 6.

are damages for bodily injury to the employee of an insured, the policy does not cover the damages.

Moreover, even if Walton were right that Entergy's claims against it could be characterized as damages for Walton's statutory violation, then Walton's claim would not be covered for a different reason: the policy covers damages for "physical injury" (and also "property damage"), not damages for statutory violations. Thus, from either angle, this argument fails.

Walton also makes an elaborate argument based on an unpublished Louisiana trial court opinion interpreting a different policy exclusion (an "Employer Liability" exclusion) in a different policy.[9] The Court finds the opinion's cursory treatment of a differently worded policy exclusion unhelpful. In addition, this Court is under no duty to defer to state court trial opinions. *See Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 261 n.4 (5th Cir. 2009)) ("[A] federal court need not defer to state trial court decisions, particularly when they are unpublished." (citing *Roecker v. United States*, 379 F.2d 400, 406 (5th Cir. 1967)). The unreported decision does not change the result dictated by the straightforward language of the policy and the cross-liability exclusion. Because the damages sought by Walton are entirely

---

[9] *See* R. Doc. 14-1 at 8-10; R. Doc 17 at 7-11; R. Doc. 23 at 2-6.

excluded under the policy, First Financial has no duty to defend or indemnify Walton against Entergy's third-party complaint in the underlying suit.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Walton's motion for summary judgment and GRANTS First Financial's motion for summary judgment.

New Orleans, Louisiana, this 12th day of March, 2015.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE